IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**SAVE ACCESS ACADEMY,**

    Plaintiff,

    v.

**MULTNOMAH COUNTY SCHOOL DISTRICT NO. 1J**, an Oregon public corporate entity by and through the Board of Directors of Multnomah County School District No. 1J and **GUADALUPE GUERRERO**, Superintendent, individually and in his official capacity,

    Defendants.

No. 3:18-cv-00928-MO

OPINION AND ORDER

**MOSMAN, J.,**

This case comes before me on Defendant's Motion for Summary Judgement [71]. For the following reasons, I GRANT the motion and dismiss all claims with prejudice.

## BACKGROUND

Plaintiff Save Access Academy (SAA) is an unincorporated association of "talented and gifted" students and "twice exceptional" students who attend the ACCESS Academy (ACCESS) and their parents. Oregon students who perform at or above the 97th percentile on one or more

nationally normed language arts, math, or cognitive/intellectual tests are considered Talented and Gifted (TAG) students and are entitled to instruction designed to accommodate their levels and accelerated rates of learning. "Twice exceptional" students are those who (1) give evidence of the potential for high achievement in areas such as specific academics, general intellectual ability, creativity, leadership, and/or visual, spatial, or performing arts; and (2) have a disability recognized under state and federal law.

Twice exceptional students qualify to receive an Individualized Education Plan (IEP)[1] or a § 504 accommodation plan from the Oregon Public School District. About 15% of the 336 students in ACCESS have IEPs, and another 6.5% of ACCESS students have Section 504 accommodation plans. About 14% of elementary and middle school students in the Portland Public School District have IEPs.

ACCESS was initially run as a first grade through eighth grade program out of Rose City Park Elementary. On May 29, 2018, SAA filed its initial complaint and a Motion for a Preliminary Injunction [2]. On May 30, 2018, the PPS Board of Education voted to split ACCESS into two school sites. After holding oral argument on the issue on June 29, 2018, I rejected the Motion for a Preliminary Injunction. Since that hearing, SAA filed an Amended Complaint which withdrew a claim alleging violation of the Equal Protection Clause, added Superintendent Guerrero as a defendant to the first claim, and added claims for violation of the Due Process Clause and for negligence per se. Defendant Multnomah County School District No. 1J, also known as Portland Public Schools (PPS), has moved for summary judgment on SAA's Amended Complaint.

---

[1] To qualify for an IEP a student must have a recognized disability (i.e. autism, communication disorder, deafness, blindness, emotional disturbance, or other health impairment).

## LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). Although the movant has the burden of showing that no genuine issue of fact exists, the nonmoving party may not rest upon "mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Each of SAVE's claims has further legal standards that apply, which will be discussed with that claim.

## DISCUSSION

SAA's First Amended Complaint raises five claims for relief. I address each claim in turn.

### I. First Claim – Violation of Due Process

The Fourteenth Amendment prohibits the government from depriving any person of property without due process of law. To make a §1983 claim based on deprivation of procedural due process; SAA must successfully show three things: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

*SAA's Property Interest*

SAA's first claim alleges that PPS deprived SAA of due process by removing its "right to a government conferred program known as ACCESS Academy as a 1st through 12th grade gifted program located on a single campus." First Am. Compl. [70] at 25. SAA cites *Goss v. Lopez*, 419 U.S. 565 (1975), for the proposition that a protected interest in property can be created and defined by sources independent of the United States Constitution, such as state statutes or rules

3 – OPINION AND ORDER

which entitle state citizens to certain benefits. In *Goss*, the Supreme Court held that because Ohio established and maintained a public school system which it required children to attend, Ohio had created a protected property interest. *Id.* at 573–74. Withdrawal of that interest for no reason and without notice and a hearing may therefore be a violation of the students' right to due process. *Id.*

SAA claims that, like Ohio, Oregon has created and maintained a public-school system which creates a property interest in a public education. *See Crawford v. Dist. Sch. Bd. No. 7*, 68 Or. 388, 401 (1913). SAA then claims that because Oregon law requires schools to identify and accommodate highly gifted students, Oregon has created a more specific property interest in a specialized education. Finally, SAA argues that the Oregon Legislature has created a property interest in the right to have educational programs for gifted students to be taught in a single location. To support this claim, SAA proffers two justifications. First, the PPS Board Policy which states that "ACCESS will be integrated into an existing school" because it is good for highly gifted children to spend time with others like them. Second, SAA argues that ACCESS has worked as a single site location until now.

PPS argues that SAA cannot have a property interest in a single site location for students of all grades because no Oregon statute, regulation, or policy confers the right to have one's school organized in a certain manner. Specifically, students do not have a property interest in the right to learn in the company of students of different grade levels, regardless of their intellectual abilities. Oregon law only requires that Oregon school districts provide programs and services for gifted students under rules that the State Board of Education (BOE) adopts. The Oregon BOE rules require that gifted students receive instruction to accommodate their higher levels of achievement and accelerated rates of learning but says nothing about the groupings in which

4 – OPINION AND ORDER

these students should receive their education. Finally, Oregon law gives district school boards the sole authority to organize and administer Oregon public schools. Because Oregon school boards have "entire control of their district public schools" along with the "power to build, furnish, and equip school buildings," this "must include the power to assign students to the respective buildings." *Padberg v. Martin*, 225 Or. 135, 141 (1960) (citing Or. Rev. Stat. §§ 332.110, .380).

I agree with PPS. SAA is correct that Oregon has conferred a property interest in a right to a public education. But I do not agree with the leaps in logic that SAA makes in its attempt to define a government-created interest in ACCESS existing as a multigrade school on a single site. I do not find that SAA has identified a protected interest in a property right and has not met the first element of a § 1983 claim to show a deprivation of due process.

*Notice and Hearing*

Along with *Goss*, SAA cites several cases discussing post deprivation hearings where holding a hearing after deprivation of a protected interest was found to be unconstitutional, analogizing the current situation with the deprivation of welfare benefits. *See Goldberg v. Kelly*, 397 U.S. 254 (1970). SAA alleges that the hearing held on June 29, 2018, in this case was a post deprivation hearing. I disagree. The split site ACCESS program did not begin until August 2018, after the June hearing. Therefore, the hearing took place before SAA was deprived of any alleged right. Further, the school board emailed and posted notice of a school board meeting regarding ACCESS program placement on May 29, 2018. On May 30, 2018, the school board held a session in which it invited public comment on the ACCESS location prior to any voting on the decision. SAA received prior notice of the school board meeting and the June hearing and had an opportunity to be heard at both. This notice and hearing, in addition to SAA's failure to

demonstrate deprivation of a protected property interest, leads me to GRANT PPS's Motion for Summary Judgment on SAA's first claim.

## Second Claim – Violation of the Americans with Disabilities Act

SAA's second claim for relief alleges that PPS has violated § 12132 of the Americans with Disabilities Act (ADA). §12132 of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress instructed the Attorney General to promulgate regulations to implement provisions of the public services portion of the ADA. *Olmstead*, 527 U.S. at 590–91. The Attorney General's regulations included a section called the "integration regulation," modeled after § 504 of the Rehabilitation Act of 1973 ("§ 504"). 28 CFR § 35.130(d). This integration regulation requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Id.* The preamble to the public services portion of the ADA regulations defines the most integrated setting appropriate to the needs of qualified individuals with disabilities as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (quoting 28 CFR pt. 35, App. A, p. 450 (1998)).

SAA argues that by splitting ACCESS into two campuses, PPS will be denying disabled and twice-exceptional students the ability to interact with their non disabled peers. But SAA's argument fails because ACCESS is not separating disabled students from non disabled students but is instead separating students by grade. Because ACCESS students are not being subjected to discrimination based on their disabilities, SAA cannot demonstrate that PPS has violated the

ADA's integration mandate. Therefore, I GRANT PPS's Motion for Summary Judgment on SAA's second claim.

### Third Claim – Violation of § 504 of the Rehabilitation Act of 1973

SAA's third claim for relief alleges that PPS has violated § 504. The public services section of the ADA was expressly modeled after Section 504. *See* 42 U.S.C. § 12134(b); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). The analysis of this claim is therefore identical to the analysis of the previous claim. Because ACCESS is being split based on grade levels and not based on the disabilities of its students, SAA has failed to demonstrate that its students are being denied benefits of a program solely by reason of their disability, and I therefore GRANT PPS's Motion for Summary Judgment on SAA's third claim.

### Fourth Claim – Negligence Per Se

SAA withdrew this claim in their Response, therefore this claim is dismissed.

### Fifth Claim – Declaratory Judgment

SAA's final claim asks me to declare that:

1. PPS has been and is in violation of law (statutes, regulations, policies) concerning the provision of TAG programs and services.
2. PPS shall maintain the ACCESS program as a unified school from 1st through 12th physically located on a single campus
3. PPS shall create, implement, and maintain a District-wide program for identifying TAG students, especially in historically overlooked minority populations and among female students.
4. PPS shall create, implement, and maintain, a District-wide TAG program in addition to ACCESS academy.

First Am. Compl. [70] at 29–30.

The Declaratory Judgment Act grants federal courts jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter

7 – OPINION AND ORDER

jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). This discretion includes consideration of whether a plaintiff's claim for declaratory judgment is duplicative of the issues raised by its other claims. *See Takeda Pharm. Co. v. Mylan, Inc.*, 62 F. Supp. 3d 1115, 1127 (N.D. Cal. 2014). "Situations justifying exercise of the court's discretion to issue a declaratory judgment include '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991) (citing E. Borchard, *Declaratory Judgments*, 299 (2d ed. 1941)).

SAA's First Amended Complaint makes clear that the only program it believes has functioned in accordance with Oregon law regarding provision of TAG programs is ACCESS. The briefings and arguments presented to me are all related to the physical location of the ACCESS program. Yet SAA asks me to rule on non-ACCESS issues with the TAG program (first, third, and fourth requests for declaratory relief). I do not find that SAA has presented the facts necessary to establish a controversy for me to make judgments on any of the issues listed in the first, third, or fourth requests for judgment. These issues are too removed from the legal arguments presented and have not been addressed sufficiently in the briefings. Because all SAA's claims are based on the administration of ACCESS, and SAA admits that ACCESS is compliant, I decline to hold that PPS is in violation of Oregon law.

SAA's second request for declaratory judgment is duplicative of the claims previously addressed in this order. Because I have already granted summary judgment on those claims, I decline to issue declaratory judgments on them. I therefore GRANT PPS's Motion for Summary Judgment on SAA's fifth claim.

## CONCLUSION

For the aforementioned reasons, I GRANT PPS's Motion for Summary Judgment and dismiss all claims against them with prejudice.

IT IS SO ORDERED.

DATED this 13 day of March, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge